UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JARED PECK, individually and on behalf of all the members of the class of persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CINGULAR WIRELESS, LLC, a Delaware limited liability company, d/b/a Cingular Wireless, et al.,<br><br>Defendants. | No. C06-343Z<br><br>ORDER |

This matter comes before the Court on Defendant's Motion to Dismiss Based on Federal Preemption, docket no. 23. The Court, having reviewed the briefs in support of and in opposition to these motions, hereby GRANTS Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff Jared Peck is an individual who is a customer of Defendant Cingular Wireless, LLC ("Cingular"), a provider of wireless cellular telephone service. (Compl., docket no. 4, at 1-2.) Mr. Peck filed suit in King County Superior Court on February 14, 2006, alleging that Defendant Cingular billed, charged, and collected a business and

ORDER 1–

occupation (B&O) tax surcharge in violation of RCW 82.04.500.[1] (Compl. at 2.) Mr. Peck seeks to represent a class of all current or past Washington state cellular phone customers of Cingular from whom it collected a "State B and O Surcharge" as a line item appearing on the customers' bills. (Compl. at 2.) Cingular filed to remove this case to federal court on March 13, 2006. (Notice of Removal, docket no. 1.) Mr. Peck did not oppose removal. Cingular now brings this Motion to Dismiss Based on Federal Preemption, docket no. 23.

## DISCUSSION

The Federal Communications Act ("FCA"), 47 U.S.C. § 332, prohibits states from regulating the "rates" of commercial mobile telephone service, but reserves to the states regulation of "other terms and conditions" of such service. The relevant section states:

> [N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services. Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates.

47 U.S.C. § 332(c)(3)(A). Cingular argues that the Court should dismiss Mr. Peck's claims because they are a challenge to Cingular's rates and are preempted by federal law. (Mot. to Dismiss, docket no. 23, at 1.) Mr. Peck argues that his claims do not challenge Cingular's rates and are not preempted. (Pl.'s Resp. to Mot. to Dismiss, docket no. 43, at 1.) For the reasons set forth below, the Court concludes that state regulation of line items constitutes rate regulation and that Mr. Peck's claims are preempted by § 332.

---

[1] "It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers, but that such taxes shall be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons." RCW 82.04.500 (2006).

ORDER 2–

**A. Section 332 Preempts State Regulation of Line items**

In 2005, the Federal Communications Commission ("FCC") issued a declaratory ruling[2] that a state regulation curtailing a wireless carrier's ability to structure its bills and isolate charges into separate line items "would have a direct effect on a [wireless] carrier's rate structure presented to its end users and, if instituted by a state commission, would be preempted by [§ 332(c)(3)]." Second Report and Order in re Truth and Billing, 20 F.C.C.R. 6448, para. 31, 6464 (2005) ("Second Report and Order").  However, the Eleventh Circuit reviewed the Second Report and Order and held that "[b]ecause the regulation of line-item billing is not rate regulation, the express language of section 332 (c)(3)(A) of the Communications Act does not preempt state regulations that require or prohibit the use of line items on cellular wireless bills." Nat'l Ass'n of State Util. Consumer Advocates v. Fed. Commc'n Comm'n, 457 F.3d 1238, 1258 (2006) ("NASUCA").[3] Because the interpretation of rates contained in the Second Report and Order is consistent with other court rulings and prior FCC usage of the term, this Court affords deference to the FCC interpretation of § 332. See Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837 (1984).

An agency interpretation is entitled to deference if (1) the plain language of the statute is ambiguous or silent on the precise question at issue, and (2) the agency interpretation is based on a permissible construction of the statute. Chevron, 467 U.S. at 842-43. "[W]here a statute's plain terms admit of two or more reasonable usages, the Commission's choice of one of them is entitled to deference." Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 125 S.Ct. 2688, 2704 (2005) (citing Verizon Commc'n Inc. v. FCC,

---

[2] In the Second Report and Order, the FCC "address[ed] a Petition for Declaratory Ruling filed by [NASUCA] seeking to prohibit telecommunications carriers from imposing any separate line item or surcharge on a customer's bill that was not mandated or authorized by federal, state, or local law." Second Report and Order in re Truth and Billing, 20 F.C.C.R. 6448, para. 1, at 6449 (2005).

[3] Mandate has not issued in NASUCA. Petition for rehearing en banc was filed on September 14, 2006 and is currently pending. Eleventh Circuit docket no. 05-11682-DD.
ORDER 3–

535 U.S. 467, 498 (2002). Shortly after Nat'l Cable, the Ninth Circuit applied Chevron to an FCC interpretation of a different section of the FCA, and found that the FCC's interpretation was entitled to deference. See Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc., 423 F.3d 1056, 1064-70. The Ninth Circuit held that the FCC's interpretation was entitled to deference because "nothing in the statute clearly preclude[d] the construction offered," id. at 1068, and the FCC's interpretation was "reasonable," id. at 1070.

The FCC's interpretation of "rates" meets the first prong of the Chevron test because there are at least two reasonable usages of "rates" as it is used in § 332. The common meaning of "rate" permits the FCC's interpretation of "rate" in § 332. Dictionaries define a "rate" as "an amount of a charge or payment . . . having relation to some other amount or basis of calculation," Oxford English Dictionary (2d ed. 1989), and "an amount paid or charged for a good or service," Black's Law Dictionary (8th ed. 2004). The NASUCA court held that "[s]tate regulations of line items regulate the billing practices of cellular wireless providers, not the charges that are imposed on the consumer. The Eleventh Circuit held that because the presentation of line items on a bill is not a 'charge or payment' for service, it is an 'other term or condition' regulable by the states." Id. (emphases added) (citations omitted). However, a line item is one of the charges a wireless customer pays in order to receive service. An ambiguity exists because "rate" could mean only the carrier's base rate, or it could refer to the total amount a customer pays for service.

The FCC's interpretation of "rates" meets the second prong of the Chevron test because it is a permissible usage of the term. The FCC concluded that "state regulations requiring or prohibiting the use of line items . . . constitute rate regulation and are preempted under section 332(c)(3)(A)." Id. Specifically, the FCC concluded that "rates charged" in § 332(c)(3)(A) includes regulation of line items. 20 F.C.C.R. para. 30, at 6462–63. The FCC found that, although Congress did not define the term "rates charged" in the FCA, rate

ORDER   4–

regulation under § 332(c)(3)(A) includes regulation of "rate levels" and "rate structures," and that state regulations regarding whether or not certain costs may be recovered by a separate line item "clearly and directly affect" rate structure. Id. para. 30–31, at 6463. To illustrate the fact that regulation of line items affects rates, the FCC explained that if states were permitted to regulate whether or not certain costs could be recovered by a line item, a carrier would have to tailor its rates and rate structure state-by-state. Id. para. 31, at 6464. Because this is a plausible interpretation of "rates," this court gives deference to the FCC interpretation. The Eighth Circuit has agreed with the FCC'as interpretation of "rate regulation" under § 332(c)(3)(A) and has held that state action which "has a clear and direct effect on rates" constitutes rate regulation. Cellco Partnership v. Hatch, 431 F.3d 1077, 1083 (2005).

The Second Report and Order is consistent with previous FCC decisions. However, "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the Chevron framework." Nat'l Cable, 125 S.Ct. at 2699. Furthermore, an agency is allowed to change an interpretation and explain its reasons for the change. Id. at 2699-2700. The FCC in its Second Report and Order gives adequate reasoning for its interpretation of "rates." The FCC noted that, while it had previously recognized that "state regulation of customer billing practices fall within 'other terms and conditions,'" the FCC had never before addressed the more specific question of "where among section 332(c)(3)(A)'s key terms state regulation prohibiting or requiring line items should fall." 20 F.C.C.R. at 6464 n.90.

For the reasons stated above, the Court gives deference to the FCC's interpretation of § 332 and holds that state regulation of line items is preempted by federal law.

**B. Plaintiff's Claims are Preempted by § 332**

Mr. Peck's claims are based on state law. However, "it is the substance, not merely the form of the state claim or remedy, that determines whether it is preempted under Section

ORDER   5–

332." In re Wireless Consumers Alliance, Inc., 15 F.C.C.R. 17021, para. 28, at 17037 (2000). Mr. Peck claims that Cingular's "collection" of the state B&O tax as a line item violates Washington law. (Compl. at 3.) Nevertheless, because the collection of the tax directly affects the rate Cingular charges, Mr. Peck's claims are preempted by § 332(c)(3)(A).

Mr. Peck argues that his claims are not preempted because another court in this district has previously ruled that claims under the Washington Consumer Protection Act ("CPA") were not preempted by the FCA. See Order on Plaintiff's Motion for Remand, Baxter Air v. NOS Commc'ns, Inc., Civ. No. C05-2119P (March 10, 2006). The plaintiff in Baxter Air alleged that the defendant used "a complex and difficult-to-understand 'call-unit' billing method," thereby engaging in an "unfair or deceptive business practice" in violation of the CPA. Id. at 1. By contrast, Mr. Peck alleges that Cingular's "billing and collecting" of the state B&O tax as a line item on his bill violates the CPA. (Compl. at 7.) Mr. Peck does not allege an unfair or deceptive business practice in his Complaint.[4]

Similarly, Mr. Peck cites Metrophones for his contention that his claims are not preempted. Pl.'s Resp. at 8. While it is true that some of the claims in Metrophones, including a state law breach of contract claim, were not preempted, the Ninth Circuit did not hold that all breach of contract claims are not preempted. Rather, Metrophones held that the plaintiff's breach of contract claim was not preempted because it was not inconsistent with the FCA. Metrophones, 423 F.3d at 1076. Mr. Peck's breach of contract claim is inconsistent with § 332 because it is based on the allegation that Cingular billed, charged, and collected the B&O tax as a line item, an allegation that implicates Cingular's rates.

---

[4] While Mr. Peck states in his Response to Defendant's Motion to Dismiss that he "claims that Cingular engages in an unfair and deceptive practice by not adequately disclosing to consumers that it passes on its Washington State B&O tax obligations in the form of a line item," Pl.'s Resp. at 4, nothing in the Complaint alleges that Cingular failed to disclose rates or taxes it charges to consumers.

ORDER   6–

### CONCLUSION

Defendant's Motion to Dismiss, docket no. 23, is GRANTED because Plaintiff Peck's claims are preempted by 47 U.S.C. § 332(c)(3)(A).

IT IS SO ORDERED.

DATED this 24th day of October, 2006.

　　　　　　　　　　　　　　　　　　／s／ Thomas S. Zilly
　　　　　　　　　　　　　　　　　　Thomas S. Zilly
　　　　　　　　　　　　　　　　　　United States District Judge

ORDER  7–